We'll now go to our last case of the day, John Roe v. Dettelbach and others, Appeal Thank you, your honors. May it please the court, counsel. My name is Thomas Magg. I represent John Roe. So who's Mr. Roe? Why is he entitled to litigate this anonymously? If the government is correct that the items in question that this case concerns are illegal contraband, by attempting to justify his rights, he would be incriminating himself. He has a right to litigate this particular case under the Fifth Amendment. Mr. Roe... He seems to want to be able to litigate it under ground rules of heads I win, tails you can't catch me. Well, this case has to be litigated somewhere. And my client is not obligated to try to protect his rights in criminal court. He is entitled to attempt to protect his rights in civil court. Why not turn the device over to the court for safekeeping while the question is litigated? Nobody has suggested that. If the case went back to the trial court, I would certainly raise that with my client. I'm not even suggested, but nobody has suggested that. Okay, it's not clear to me why you're entitled to do this anonymously. Because under the Fifth Amendment, my client has a right not to incriminate himself. I'm familiar with the principle. You would expect a lot of cases, though, about this. This isn't the registration requirement is necessary. There are all kinds of laws I can think of that have both civil and criminal aspects to them, including the antitrust laws that we were talking about in the first case this morning. And people just have to litigate. I mean, if you want to bring a civil antitrust case and there might be evidence that comes out that shows that you were price fixing, that's the way it goes. You don't have a right to litigate anonymously. Well, the trial court actually issued an order and initially addressed this issue and found that, at least through the motion to dismiss phase, that my client could proceed anonymously. And that's where we are, is that the motion to dismiss phase is a practical matter. This case was dismissed on a 12b6 motion to dismiss. The trial court addressed this issue and found that, as I said, through the 12b6 motion at least, we could proceed anonymously. The court indicated that if we got passed a motion to dismiss, he might reassess the issue. We'll consider it. We won't do anything with that in order to show cause. Why don't you go ahead and proceed to the merits. All right, as to the merits of the case. Prior to 1981, it was perfectly legal, I think everybody, if not actually, at least tacitly concedes, to possess an item called a drop-in auto sear. As long as you didn't, at the same time, have some other weapons that you could use. As long as you also didn't have an M16 bolt and some other M16 parts. In isolation, it was legal. In 1981, the ATF reclassified the drop-in auto sear to be, in and of itself, a machine gun. Machine guns, under the National Firearms Act, have, for decades, been required to be registered. And isn't the gist of your argument, this ruling 81-4, that you read as grandfathering the drop-in auto sears from before that 81 change, and the government reads it as saying, no, it's just, it's a tax thing. It doesn't mean that you didn't have to register it. And indeed, people were registering some. Anybody that possessed one prior to the 1981 ruling, pursuant to US v. Freed, 1972, U.S. Supreme Court, could not register. Mere possessors cannot register. Some people did register. Makers could register. Manufacturers could register. Not in 1982, you applied to fill out a form and said, I want to pay the $200 making tax, all things being equal, you could do it. So you don't dispute that your client is not registered and he hasn't paid tax on it, correct? So in other words, you don't dispute that you don't comply with the NFA requirements. You're just seeking what you think should be an exemption under the 1981. What we're saying is, either we're entitled to a grandfathering pursuant to the ruling, which is what it says, understanding this court in dicta has indicated that that's not perhaps allowed, or perhaps what, in the federal register, as of about three weeks ago, the ATF appears to be proposing for what they're about to do to short barrel rifles and have a period to register when they change the rules here, apparently in December. But your big problem seems to be that your client, whoever he is, legally owned this thing, this drop-in auto seer, for a couple of years. The law changed and he was kind of stuck, as you see it, that there was no way for him to register, there was no way for him to regularize his ownership. At one point you had a serious argument in this case, but the time has long since passed for any assertion of that sort. Sometimes that's happened in these gun cases where some weapon is made illegal and people have lost the value of it. But that's not really what you're saying, and rightly so at this point. And I'm not sure how this court, any kind of amnesty period or change ATF's decision about what falls under the National Firearms Act. No, but what you can do is what this court did in 1972, eventually adopted by the U.S. Supreme Court in U.S. v. Haney's in 1968, and say, well, in Haney's the self-incrimination provisions of the National Firearms Act as it existed then provides a full defense under the Fifth Amendment to failure to register. But that goes so much further than the Fifth Amendment. I mean, if he turned it into ATF at the same time, he did. Under the National Firearms Act, there is a mechanism, there's a statute that allows then the Secretary of the Treasury, now the Attorney General, to hold unlimited amnesty periods. And that's not us. I mean, as you well know, we are Article III, they're powers. We can't tell the Attorney General to hold an amnesty period. No, but what you can do is say, well, if you don't do X, the repercussion is you can't prosecute for... We don't tell the Department of Justice who they can prosecute. Actually, this court in the Illinois concealed carry case held unconstitutional Illinois's concealed carry law, and as a practical matter enjoined it. That's as a practical matter what we're saying you could do here. In that case... You haven't asked us to hold this unconstitutional, though. I think it is unconstitutional. But that's not what you've argued in your briefs, and that's not what you argued below. You've said that you fall within the 1981 ruling, 81-4, which exempts you from the NFA requirements. Two arguments. That's one of them. They're alternative Neither one says this is unconstitutional. It is unconstitutional to say you don't have to register on day one. On day two, say we're going to change the rules, but never give you a chance to register. That's why I mentioned taking, because what people say is effectively you have deprived me of all of the use of my item here, the auto seer, and the Court of Federal Claims sits to people shouldn't have their property taken away from them if it was perfectly lawful to start with. But that argument is not in this case, and I'm concerned that looking at ruling 81-4, and this has been held in other cases, I believe, it deals with taxation, and that's the reason probably why you can't register. But I don't think you can squeeze as much out of 81-4 as you're trying to. As is noted in the record, the ATF themselves, at least internally, for years considered these under 81-4 to be grandfathered and legal. It is only after some dicta from this court in U.S. v. Cash, and another case cited in my brief, where even this court noted that they're not getting to the substance of the record, because even the U.S. attorneys in those cases acknowledge the position of the grandfather. Well, in Cash, that's what we said. We said only the Secretary, at that time of the Treasury, will not collect any tax on account of auto seers manufactured transferred before November 1, 1981. So that's the law in this circuit at the moment. Well, again, I think that is dicta, but there was no—if my client fills out the transfer paperwork, and ATF form 4 specifically, sends in the transfer tax and all the other required information as is pleaded in the complaint, they won't accept it. It'll come back as unregisterable, untransferable, because it's not registered. And there has never, ever, at any time in history, been a chance for anyone—my client, his predecessor in possession—anyone to register these items. If you're going to criminalize possession of an unregistered item, basic due process requires that somebody, at some point, must have given some chance to register it. Why? Because the law then requires an impossible act. Maybe what the law is saying is that it's a contraband item. Then why didn't the ATF say that in the ruling? I don't disagree with you that it's a cryptic ruling to go that far, but that's what we said in Cash. Well, again, I mean, in Cash, this Court noted, we proceed again without getting to the merits of the issue. I mean, that is dicta. And I understand it's rather pointed dicta, but it is dicta. But the background rule of the National Firearms Act simply requires registration, not just of this item or that item. It requires registration. It does require registration, but if it's impossible to register because the rule has been changed by the government, then my client or his predecessor in possession should not be so limited. It's a different question, though, than it's illegal to start with and thus you can't register. It's legal to start with, the rules change, and no chance is ever made to allow registration. Then why isn't the takings remedy sufficient for that? Maybe it would have been, except the rules appear to have changed even after the 81 ruling, where the government, the ATF, stopped saying your item is grandfathered. At some point, the record's all over the place as to when the government said, well, you're no longer grandfathered, you're contraband. We're not even sure exactly when that took place, to be candid with the court. Okay. Thank you very much, Mr. Wright. Thank you, Your Honors. We will have a moment for rebuttal. Thank you. Mr. Hazel for the government. Good afternoon, Your Honors. May it please the Court, Stephen Hazel for the government. Since 1968, federal statute has made it a crime to possess an unregistered auto seer. Plaintiff's argument that that prohibition is somehow exempted by a single sentence in a decades-old ATF ruling is extraordinary. As this court explained in Cash, that ruling did not and could not create an exemption for an entire class of illegal machine guns. Plaintiff's auto seer was illegal when he purchased it. It remains illegal today. Was it illegal when he purchased it? I thought in 1979, if he didn't have the other weapons, the M16s or whatever they were, it wasn't illegal. Is that incorrect? It is, Your Honor, and let me explain why. So in 1968, Congress passed the Gun Control Act, which expanded the definition of a machine gun. That expanded definition includes any combination of parts intended to convert a semi-automatic weapon into a machine gun. Auto seers plainly— Not by itself. I thought you needed the auto seer plus maybe a few other things to convert. No, Your Honor. So auto seer is a combination of parts, as ATF explained in this ruling. It includes—I think there's four different parts involved, and it is plainly something that is intended to convert a semi-automatic weapon into a machine gun. And I would note that in Cash, this court found that indeed the auto seer was itself a machine gun. And just to say a little bit more about Cash, since there were a number of questions about that, that's a case where this court looked at this particular ruling. It looked at this particular reading of the ruling and engaged in extensive analysis of that ruling, and the court concluded that the reading that plaintiff is advancing here was just not correct. Do you agree it's dicta, or do you think it's part of the holding? I think it's dicta, Your Honor. I think there's a—dicta exists on a spectrum. This is about as issue, and that's this extensive analysis. So I wouldn't say that this court is controlled by Cash, but I would say it would be—it would strike me as very unusual to not follow Cash in a case presenting the same precise issue. So I understand you're saying it was illegal when he got it under your reading today of the 1968 legislation. That's right, Your Honor. But that didn't seem to be the government's view in 1979. Well, Your Honor, I think the only real piece of evidence—I mean, we obviously don't have a time machine. We're looking at things 40 years in the past or more. I think the only real piece of evidence we have about ATF's reading at the time is that 1981 ruling where their experts looked at one of these auto sears, said, look, this meets the statutory definition of a machine gun under the Gun Control Act. I think that's the best evidence we have at this point, given that we are here on a limited record on a motion to dismiss. But that ruling 81-4, which just says, with respect to the machine gun classification of the auto sear under the NFA, pursuant to this tax provision, you know, 26 U.S.C., etc., this ruling will not be applied to auto sears manufactured before November 1, 1981. And then those afterwards are subject to everything. That—even if I give you that that says we're not going to tax auto sears manufactured prior to that date, boy, is that an indirect way of saying, oh, but by the way, they all are machine guns and they are subject to all of the registration requirements and prohibitions and blah, blah, blah from the statute. Don't you think it's kind of indirect at best? No, Your Honor. I mean, I guess a couple pieces of evidence that it was clear in that ruling, this Court's decision in Cash and also the Sixth Circuit's decision in Dodson, both cases directly on point, reading this ruling and saying, you know, no, it does not create some kind of exemption for post-1981 possession of auto sears. Is there a mens rea requirement for the criminal conviction? I believe so, Your Honor. I think it's something like you need to be familiar with the characteristics of the weapon that make it an illegal one. So, you know, you may need—go ahead. Well, that, I mean, this is not a criminal prosecution, but given 814, given the history we have here, I would think it would be very difficult to constitutionally convict somebody of possession of such a pre-November 181 device. Your Honor, as you say, this isn't a prosecution. This is a request for prospective relief, allowing the plaintiff to continue to possess this illegal machine gun now and in the future. If someone had been prosecuted 40 years ago and had read this ruling, perhaps there might have been some sort of good faith or detrimental reliance defense. That's just not the case at issue. What are Mr. Rowe's options today from your standpoint? He should destroy the auto sear that he has. There's also a process by which he can abandon it to the ATF. So those are the two possibilities. Does he risk criminal prosecution if he abandons it to the ATF? Your Honor, I don't think there is sort of a formal amnesty. I can say that in practice, ATF has a strong incentive to encourage people to give up weapons like this. A prosecution would be very improbable. And if that was something the plaintiff is worried about, he's free to destroy the auto sear on his own. I'd be very happy to answer any further questions that the court may have. Could you address the point in the plaintiff's reply brief about the APA statute of limitations and the March 2015 publication date that he says he's relying on? Yes, Your Honor. And just to be clear, if the court agrees with us on the proper reading of this 81 ruling, the court does not need to reach the APA issue or the statute of limitations issue. Would you agree that this 81-4 ruling is a merits ruling and that we are not in the morass of Article III standing? Your Honor, we haven't taken a position on that. This court has said there are cases where there's a fine line between Article III standing and the merits. This is one of them. Part of the reason we filed a cross-appeal was to make sure that this case didn't devolve into a dispute about exactly which label to put on this. You know, what's... If we were to say this is actually a merits, a 12B6 type situation and we ruled in favor of the government, that would be a dismissal with prejudice and so more relief than you got before. It's the cross-appeal. Your Honor, we're not requesting that this court change the nature of the judgment. We cited this... We would have to if it were on the merits. I'm not so sure, Your Honor. As I read this court's decision in Cadiz, which we decided in our jurisdictional memorandum, that case says that an appellee can advance arguments the logical implications of which would change the judgment as long as we are not actually seeking to change the judgment. We believe that that ruling is still, that Cadiz holding is still good law. And of course, in any event, we did file a cross-appeal. So if this court does decide to put this under... Well, that's what you said. This brief includes the 12B6 arguments the cross-appeal was intended to preserve. That's exactly right, Your Honor. So could we go back to if we reach the statute of limitations question? Yes, I apologize, Your Honor. The editor, this 2014 editor's note that he's... The plaintiff is challenging his complaint. That was published in September 2014. It's stated clearly on that publication. I believe the March 2015 date that the reply references, it says that there were some typos that were corrected, and so it was reissued on that date. I don't know why that would be any basis for resetting the statute of limitations for the particular editor's note that the plaintiff appears to be challenging here. Okay. Unless there's anything else, we would ask that this court affirm. All right. Thank you very much, Mr. Hazel. Mr. Magg, anything in rebuttal? Thank you, Your Honors. I would simply also want to note, in addition to APA claims, we do have claims under the Declaratory Judgment Act, which, in fact, the trial court found that we... I don't want to say it's stated cause of action, so he ultimately dismissed under 12b6, but found that we could at least proceed further based upon. Unless, Your Honors, you have any further questions, that's all the rebuttal I've got. Okay. Thank you very much to both counsel. The case will be taken under advisement, and the court will be in recess.